UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------x
:
COLGAN FINANCIAL GROUP, INC.          :   CIVIL ACTION NO.:
:
v.                                    :
:
FIRST 100, LLC;                       :
JAY BLOOM; AND                        :
MATTHEW FARKAS                        :
:   August 29, 2014
---------------------------------------------------------x

## VERIFIED COMPLAINT

### The Parties

1. Colgan Financial Group, Inc. ("CFG") is a corporation organized under Connecticut law with its principal place of business at 265 Post Road West, Westport, Connecticut.

2. First 100, LLC ("F100") is a limited liability company organized under Nevada law with its principal place of business at 11920 Southern Highlands Parkway, Las Vegas, Nevada. Upon information and belief, all of the members of F100 are citizens of Nevada or are not citizens of Connecticut.

3. Jay Bloom ("Bloom") is an individual citizen of Nevada. He is a director, founder and owner of F100.

4. Matthew Farkas ("Farkas") is an individual citizen of Nevada. He is an executive officer and, upon information and belief, owner, of F100.

**Jurisdiction and Venue**

5. This Court has subject matter jurisdiction for this action pursuant to 28 U.S.C. § 1332(a)(1) as there is complete diversity of citizenship and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district and the defendants are subject to personal jurisdiction in this district.

7. Further, jurisdiction and venue are proper in this district because the defendants agreed to exclusive jurisdiction in this Court for any controversy related to the agreements at issue in this action. In particular, in the Loan Agreement (defined below), Promissory Note (defined below), and Equity Profit Sharing Agreement (defined below), F100 agreed to the exclusive jurisdiction of this Court and agreed to waive and not assert any objections to such jurisdiction, including those related to forum non conveniens. In addition, in the Guarantees (defined below), Bloom and Farkas agreed to the exclusive jurisdiction of this Court and agreed to waive and not assert any objections to such jurisdiction, including those related to forum non conveniens.

**Waiver of Trial by Jury**

8. In the Loan Agreement, F100 waived its right to a trial by jury of any claim or cause of action arising out of any of the loan documents. In the Guarantees, Bloom and Farkas waived their respective rights to a trial by jury of any claim arising under or relating to such Guarantees.

## Background to All Claims

9. Pursuant to an agreement between F100 and Association of Poinciana Villages, Inc. ("Poinciana Villages"), F100 had the right to purchase a portfolio of homeowner's association liens and other assets (the "Poinciana Portfolio") from Poinciana Villages for a purchase price of approximately $711,565. This right expired on December 23, 2013 and F100 did not have the funds to pay the purchase price. If F100 did not secure the purchase price by December 23, 2013, its right to acquire the Poinciana Portfolio would expire worthless.

10. On or about December 16, 2013, F100 and CFG began negotiations for CFG to provide an immediate short term bridge financing to F100 to enable F100 to purchase the Poinciana Portfolio. CFG agreed to provide the financing and acted quickly in reliance upon information, representations and warranties made by F100, Bloom and Farkas.

## The Loan Agreement, Promissory Note and Guarantees

11. Pursuant to a Loan and Security Agreement (the "Loan Agreement") and Short Term Original Issue Discount Promissory Note (the "Promissory Note"), each dated December 20, 2013, CFG provided $750,000 in bridge financing to F100. With this financing, F100 was able to purchase the Poinciana Portfolio on or about December 23, 2013. (The Loan Agreement and Promissory Note are attached hereto as Exhibit A and Exhibit B, respectively.)

12. Bloom and Farkas (each, a "Guarantor" and together, the "Guarantors") each provided an unconditional Guaranty (each, a "Guaranty" and together, the "Guarantees") dated December 20, 2013 of the full and final payment of the funded portion of the Promissory Note in the amount of $750,000. (The Guarantees are attached hereto as Exhibit C and Exhibit D.)

13.     In connection with the Loan Agreement, F100 granted to CFG a 1% interest in the Poinciana Portfolio pursuant to an Equity Profit Sharing Agreement dated December 20, 2013. (The Equity Profit Sharing Agreement is attached hereto as Exhibit E.)

14.     Pursuant to the Loan Agreement, F100 granted to CFG a first priority lien on all of F100's currently owned and subsequently acquired real and personal property and assets (the "Collateral") to secure F100's performance of the Secured Obligations (as defined in the Loan Agreement), which include F100's obligations under the Loan Agreement, Promissory Note and Equity Profit Sharing Agreement.

15.     Under the Promissory Note, F100's first return on investment payment obligation came due on January 20, 2104.  F100 defaulted on this payment obligation.

**Amendment No. 1 and Amendment No. 2**

16.     Following this default, CFG and F100 entered into that certain Loan and Security Agreement, Short Term Original Issue Discount Promissory Note and Equity Profit Sharing Agreement Amendment #1 dated February 14, 2014 ("Amendment No. 1").  Among other things, Amendment No. 1 extended the payment dates under the Loan Agreement and Promissory Note.  In addition, F100 agreed to increase CFG's interest in the Poinciana Portfolio to 4%. (Amendment No. 1 is attached hereto as Exhibit F.)

17.     In Amended No. 1, F100 confirmed that it is "unconditionally indebted" to CFG for all amounts owed under the Loan Agreement, Promissory Note and Equity Profit Sharing Agreement and that F100 "has no claims, causes of action or counterclaims, whatsoever, in law or equity, in connection with such Agreements."

18. Amendment No. 1 expressly provides that the terms and conditions under the Loan Agreement, Promissory Note and Equity Profit Sharing Agreement remain the same and in full force and effect, except as specifically modified or replaced in Amendment No. 1.

19. Amendment No. 1 also provides that if F100 failed to make payments under the Loan Agreement and Promissory Note pursuant to the new payment schedule agreed to in Amendment No. 1, then the payment dates set forth therein would automatically be extended until April 20, 2014 and the CFG interest in the Poinciana Portfolio would increase to 5%.

20. Pursuant to Amendment No. 2 to Equity Profit Sharing Agreement dated March 3, 2014 ("Amendment No. 2"), the parties documented the formula pursuant to which CFG's interest in the Poinciana Portfolio would be paid (as had been contemplated by Amendment No. 1). (Amendment No. 2 is attached hereto as Exhibit G.)

21. Amendment No. 2 provides that the terms and conditions of the Equity Profit Sharing Agreement, as amended by Amendment No. 1, remain the same and in full force and effect, except as specifically modified or replaced by Amendment No. 2.

22. F100 again defaulted on its payment obligations under the Loan Agreement and Promissory Note, as amended, and, accordingly, CFG's interest in the Poinciana Portfolio increased to 5% as provided in Amendment No. 1, as set forth in an acknowledgement letter executed by F100. (The acknowledgement letter is attached hereto as Exhibit H.)

23. F100 again defaulted on its payment obligations under the Loan Agreement and Promissory Note, as amended, by failing to make any required payments on April 20, 2014. In addition, F100 defaulted under Loan Agreement by, among other things:

5

(a)     failing to provide financial statements and reports required under the Loan Agreement;

(b)     making restricted payments to Leading Ventures Enterprise Matching ("LVEM"), an entity owned by the members of F100, in violation of the prohibition in the Loan Agreement against distributions to members of F100; and

(c)     failing to provide CFG with notice of these events of default as required under the Loan Agreement.

24.     On April 30, 2014, CFG provided default notices (the "Default Notices") to F100 and each Guarantor based on the payment defaults under the Loan Agreement and Promissory Note, as amended, and other violations thereof. (The Default Notices are attached hereto as Exhibits I, J and K.)

25.     In connection with the Default Notices, CFG demanded payment from each Guarantor pursuant to each Guaranty.

**Forbearance Agreement and Amendment No. 3**

26.     Following the Default Notices, CFG, F100 and the Guarantors entered into that certain Forbearance Agreement dated May 14, 2014 and that certain Amendment No. 3 to Equity Profit Sharing Agreement ("Amendment No. 3"). (A copy of the Forbearance Agreement is attached hereto as Exhibit L and a copy of Amendment No. 3 is attached hereto as Exhibit M.)

27.     In the Forbearance Agreement, F100, Bloom and Farkas affirmed that F100 is in default under the terms of the Loan Agreement as provided in the Default Notices. Further, in the Forbearance Agreement, F100 affirmed that it is "unconditionally indebted" to CFG for all amounts owed under the Loan Agreement, Promissory Note and Equity Profit Sharing

6

Agreement and "has no claims, causes of action or counterclaims, whatsoever, in law or equity, in connection with such agreements."

28. In addition, in the Forbearance Agreement, F100, Bloom and Farkas agreed to, among other things, release CFG from any claims, whether now accrued, known or known, which any of them may have with respect to matters arising out of or with respect to any of the loan documents or other arrangement or relationship between CFG and F100 for any period through the date of the Forbearance Agreement.

29. The Forbearance Agreement provides, among other things, that in consideration for CFG's forbearance from exercising its rights under the Loan Agreement and other loan documents, F100 shall:

    (a)    cease and desist from further defaults under the loan documents;

    (b)    cease making payments to LVEM;

    (c)    cease further sales of Collateral without consent of CFG and apply the proceeds of certain agreed upon sales of Collateral as set forth in the Forbearance Agreement;

    (d)    immediately take all actions necessary for CFG to enter into deposit account control agreements covering F100's bank accounts and to provide mortgages of all real property owned by F100; and

    (e)    provide CFG with a daily list of proposed disbursements to be made the following day.

30. Pursuant to the Forbearance Agreement, each Guarantor is obligated to cause F100 to take the actions required by the Forbearance Agreement and is jointly and severally

liable for any damages suffered by CFG arising from or relating to a breach of the Guarantors' obligations in the Forbearance Agreement.

31. F100 breached its obligations under the Forbearance Agreement and each Guarantor breached his obligation to cause F100 to perform its obligations under the Forbearance Agreement.

**Continued Breaches**

32. Between May 14, 2014 and May 30, 2014, F100 made partial payments to CFG in the amount of $1,059,899.33, a portion of which CFG received in connection with a certain financing arrangement entered into with Omni Financial, LLC ("Omni").

33. In accordance with Section 5.4 of the Loan Agreement, F100 applied these payments to CFG's costs and expenses, default interest and the ROI Payments as set forth in the Promissory Note. After application of these payments, the Principal Funding Amount of $750,000, plus additional default interest and other expenses, remains outstanding and in default under the Loan Agreement and Promissory Note.

34. During the course of discussions with F100, Bloom represented that the financing with Omni was scheduled to close in two stages. According to Bloom, the first stage of the funding closed on or about May 30, 2014, in the amount of $2,500,000. Notwithstanding F100's receipt of these proceeds, the obligations to CFG remain unsatisfied.

35. Pursuant to the Forbearance Agreement, CFG approval is required for any additional disbursements. F100 has not sought CFG approval for disbursements and has not provided CFG a statement of the use of proceeds of such financing, as required by the Forbearance Agreement. CFG is concerned the additional $1,500,000 in proceeds from the first

Omni funding have been used improperly, including that such funding was improperly distributed to members of F100 in violation of the loan documents. Accordingly, F100 has breached the Forbearance Agreement and each Guarantor has breached his individual obligations set forth therein by failing to cause F100 to perform its obligations.

36. Bloom represented to CFG, orally and in writing, that the second stage of the Omni transaction was scheduled to close on June 6, 2014 and that F100 would satisfy the obligations to CFG under the Loan Agreement and Promissory Note with a portion of the proceeds from this second stage of the financing. Bloom represented that the payoff might slip until June 9, 2014, if F100 did not receive funds from Omni in time on June 6, 2014 to initiate a wire transfer of the payoff amount to CFG on that day. This payoff was never made. Since June 9, 2014, F100 has informed CFG on multiple occasions that a financing was about to close to induce CFG from exercising its rights and remedies. Presently, the obligations to CFG have still not been satisfied.

### FIRST CLAIM FOR RELIEF
### (Breach of the Loan Agreement, Promissory Note and Forbearance Agreement Against F100)

35. CFG realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 34 as if fully set forth herein.

36. CFG has fully performed its obligations under the Loan Agreement, Promissory Note and Equity Profit Sharing Agreement, as amended, and the Forbearance Agreement.

37. F100 has breached the Loan Agreement and Promissory Note, as amended, by failing to pay the amounts due thereunder to CFG.

38. F100 has further breached its obligations under the Loan Agreement, as amended, and the Forbearance Agreement (a) to provide a daily list of disbursements to be made the following day, (b) to obtain consent of CFG prior to making any disbursements, (c) to provide reports and other information required by the Loan Agreement and Forbearance Agreement and (d) by breaching other representations, warranties and covenants as set forth therein and in the Forbearance Agreement, including making improper distributions.

39. As a direct and proximate consequence of F100's material contractual breaches, CFG has suffered, and will continue to suffer, damages in an amount to be ascertained at trial, but in excess of $75,000, excluding attorneys' fees, interest and costs.

40. Pursuant to the terms of each of the applicable loan documents, CFG is entitled to recovery from F100 of CFG's attorneys' fees and costs of collection incurred in connection with the enforcement thereof.

## SECOND CLAIM FOR RELIEF
### (Breach of Guarantees and Forbearance Agreement Against Jay Bloom and Matthew Farkas)

41. CFG realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 40 as if fully set forth herein.

42. In each of their respective Guarantees, Bloom and Farkas each unconditionally guaranteed and promised to pay the funded portion of amounts due under the Loan Agreement and Promissory Note.

43. Despite demand, Bloom and Farkas breached their respective obligations under his respective Guaranty by failing to pay amounts due thereunder in accordance with the terms thereof.

44. Pursuant to the terms of the Forbearance Agreement, Bloom and Farkas were each obligated to cause F100 to perform its obligations under the Forbearance Agreement.

45. Despite repeated requests of F100 and each Guarantor, F100 has failed to perform it obligations under the Forbearance Agreement and each Guarantor has failed to cause F100 to perform such obligations.

46. As a direct and proximate consequence of Bloom's and Farkas's material contractual breaches, CFG has suffered, and will continue to suffer, damages in an amount to be ascertained at trial, but in excess of $75,000, excluding attorneys' fees, interest and costs.

47. Pursuant to the terms of the applicable loan documents, CFG is entitled to recovery from Bloom and Farkas of its attorneys' fees and costs of collection incurred in connection with the enforcement thereof.

### THIRD CLAIM FOR RELIEF
### (Breach of Equity Profit Sharing Agreement Against F100)

48. CFG realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 47 as if fully set forth herein.

49. CFG has performed all of its obligations under the Equity Profit Sharing Agreement, as amended.

50. Pursuant to Amendment No. 3 to the Equity Profit Sharing Agreement, F100 assigned to CFG an undivided 5% interest in all of F100's right, title and interest in and to the Poinciana Portfolio.

51. Among other things, Amendment No. 3 requires F100 to provide irrevocable instructions acceptable to CFG to each such law firm, collection agency or other third party that (a) 5% of all amounts collected from the Poinciana Portfolio shall be distributed directly to CFG

11

and (b) all non-attorney client privileged financial reports, documents and other information produced by any such law firm, collection agency or third party relating to such collections and the realization of proceeds from the Poinciana Portfolio shall be provided to CFG at such time as any such reports, documents or other information is provided to F100.

52.     On May 28, 2014, CFG provided the foregoing instructions for F100 to provide to the law firm that performs the legal services and collects the proceeds relating to the Poinciana Portfolio. To date, F100 has refused to provide these instructions.

53.     As a direct and proximate consequence of F100's material contractual breaches, CFG has suffered, and will continue to suffer, damages in an amount to be ascertained at trial, but in excess of $75,000, excluding attorneys' fees, interest and costs.

54.     As a direct and proximate consequence of F100's material contractual breaches, CFG is entitled to specific performance by F100 of its obligations under the Equity Profit Sharing Agreement, as amended.

55.     Pursuant to the terms of the applicable loan documents, CFG is entitled to recovery from F100 its attorneys' fees and costs of collection incurred in connection with the enforcement thereof.

## FOURTH CLAIM FOR RELIEF
### (Violation of Conn. Unfair Trade Practices Act Against All Defendants)

56.     CFG realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 55 as if fully set forth herein.

57.     Plaintiff is a "person" as defined by Conn. Gen. Stat. § 42-110a(3).

58.     The foregoing actions of the defendants constitute the conduct of trade or commerce pursuant to Conn. Gen. Stat. §§ 42-110a(4) and 42-110b(a).

59.     The foregoing actions of defendants are immoral, unethical, oppressive and/or unscrupulous, and have caused substantial injury to plaintiff.

60.     The foregoing actions of defendants constitute unfair and/or deceptive trade practices in violation of Conn. Gen. Stat. § 42-110a et seq.

61.     As a result thereof, plaintiff has suffered an ascertainable loss of money.

WHEREFORE, CFG claims the following relief:

1.      That this Court issue a temporary restraining order, preliminary injunction and permanent injunctive against the defendants and any persons or entities acting in concert with them:

   a.   To immediately turn over to plaintiff F100's financial statements and reports, balance sheets, income statements, statements of cash flows and all other financial information as provided in the loan documents;

   b.   To immediately take all action necessary for the appointment of CFG as the true and lawful attorney in fact of F100, with powers set forth in Section 5.2(f) of the Loan Agreement.

   c.   To immediately disclose to plaintiff all payments or disbursements made from any prior funding received or otherwise;

   d.   To cease and desist from making any payments, distributors or dividends to any of the F100's members and LVEM;

   e.   To provide to CFG a daily list of all disbursements to be made by F100 and to cease and desist from making any such disbursements without the written consent of CFG;

   f.   To cease and desist from the sale, disposal, leasing or encumbrance of any Collateral;

   g.   To immediately take all action necessary for CFG to enter into deposit account control agreements covering F100's bank accounts;

   h.   To cease and desist from opening any bank accounts;

    i.    To immediately take all action necessary to provide mortgages to CFG of all real property owned by F100;

    j.    To immediately provide the irrevocable instructions required by the Equity Profit Sharing Agreement, as amended, to each such law firm, collection agency or other third party providing services relating to the Poinciana Portfolio;

    k.    To respond to CFG's information requests regarding F100's efforts to secure bridge and/or long term financing;

    l.    To deposit with the Court an amount equal to the outstanding sums owed CFG upon receipt by F100 of all bridge and/or long term financing;

    m.    Any other and further relief necessary to protect CFG's interests in the Collateral and other rights under the loan documents.

2.    On the First Claim for Relief: Compensatory damages against F100 in the amount of $1,230,983, plus any additional principal, default interest, late charges, attorney's fees, costs of collection and all other amounts due under the Loan Agreement, Promissory Note and Forbearance Agreement;

3.    On the Second Claim for Relief: Compensatory damages against Bloom and Farkas, jointly and severally, in the amount of $1,230,983, plus any additional principal, default interest, late charges, attorney's fees, costs of collection and all other amounts due under the Guarantees and Forbearance Agreement;

4.    On the Third Claim for Relief: Compensatory damages against F100 for breach of Equity Profit Sharing Agreement in an amount to be determined at trial, but in no event less than $75,000 exclusive of costs and interest, plus attorney's fees and costs of collection and all other amounts due under the Equity Profit Sharing Agreement;

5.    On the Third Claim for Relief: Specific performance by F100 of the Equity Profit Sharing Agreement, including an order directing F100 to provide the irrevocable instructions

required by the Equity Profit Sharing Agreement, as amended, to each such law firm, collection agency or other third party providing services relating to the Poinciana Portfolio;

6. On the First, Second and Third Claims for Relief: A full accounting of all proceeds received by F100 and all activity relating to the Poinciana Portfolio;

7. On the Fourth Claim for Relief: Compensatory damages in an amount to be determined at trial, but in no event less than $75,000 exclusive of costs and interest;

8. On the Fourth Claim for Relief: Punitive damages pursuant to Conn. Gen. Stat. § 42-110a, et seq.;

9. A preliminary and permanent injunction against the defendants

10. Pre-judgment and post-judgment interest;

11. Costs; and

12. Such other and further relief as the Court deems just, proper and equitable.

PLAINTIFF
COLGAN FINANCIAL GROUP, INC.

_____
Robert Laplaca (ct 21184)
Andrew B. Nevas (ct 05059)
LEVETT ROCKWOOD P.C.
33 Riverside Avenue
P. O. Box 5116
Westport, CT 06881
Telephone: (203) 222-0885
Facsimile: (203) 226-8025
Email: rlaplaca@levettrockwood.com
Email: anevas@levettrockwood.com
*Its Attorneys*

## VERIFICATION

I, Robert Colgan, do hereby depose and state that I the President of Colgan Financial Group, Inc. and am authorized on its behalf to make this Verification; that I have reviewed the foregoing Complaint; and that the facts contained therein are true and correct to the best of my information and belief. I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 29, 2014.

_____
Robert Colgan

268405

16